Good morning, Your Honors. If it pleases the Court, my name is Frank Sayet, and I represent the petitioner, Lord Peck. Let me begin by confirming with the Court that we did submit a 28-J letter earlier this week. And this started off in our appeal, as indicated in our opening brief, three years ago, as a pretty simple substantive evidence appeal of a cat denial and withholding of removal denial case against my client. But I presume that the reason why the case has been scheduled for oral argument is not to go over necessarily the evidence, but because to discuss the intervening Ninth Circuit case, Estrada, for the particular reason that although we did not make the argument that he had no aggravated felonies, that issue was raised with the Board of Immigration Appeals. In January of 2006, when we filed the opening brief, the case law in the Ninth Circuit was very negative against any argument that my client's California Penal Code Section 261.5d convictions were not aggravated felonies. As the Court is aware, at that time there were precedents indicating that the Court would not look to the federal criminal crime statute for sexual abuse of a minor for the elements in defining the immigration aggravated felony definition for sexual abuse of a minor. There were also cases that indicated it was both an aggravated felony as a sexual abuse of a minor, as well as a crime of violence, although that case of Valencia was later withdrawn and changed. So at the time, we really didn't have firm ground to make a pitch and to contest the aggravated felony issue. But now we obviously do, because of ---- Isn't your remedy then a motion to reopen before the BIA? That is one of the things that we can do as well, Your Honor. Right. I mean, your notice of appeal and the issues you raised are pretty fixed at this point. And obviously I'm familiar with, as we all are, with Estrada. But it's we would have to expand the scope of your appeal to consider those issues now. There are three exceptions to the general rule that issues not raised specifically in the opening brief are waived. One of them is when there's good cause. In this particular reason or case, as I explained, it's not so much that there was a change in the law. It would be different if Congress simply passed a new law and he has another type of relief that wasn't available to him before. But this was simply the Ninth Circuit changed its interpretation of the aggravated felony definition that has been around and that was interpreted incorrectly by the Board of Immigration Appeals. There ---- and the second exception typically is when there's no prejudice. And obviously we would offer to provide a supplemental briefing schedule if that pleases the Court. But you are correct that the Ninth Circuit appeal and also a separate motion to reopen before the Board of Immigration Appeals are two separate tracks and one doesn't foreclose the other. Right. And I gather by your argument you have not filed a motion to reopen with the Board as yet, true? Not yet, Your Honor. So why don't we turn to the issue that you raised in your briefs, the CAT question. The BIA affirmed the IJ decision. And the main problem with the conclusions of the IJ and the Board is it jumps from ---- it relies on a country report that specifically states that of the repatriated Cambodians back when the report was prepared, 36 out of 36 were detained for several weeks. But then the report goes on to indicate that those individuals were released. Do you have any evidence in the country report or to rebut the country report with respect to the 36 individuals that they were tortured or received some other maltreatment? We did not. We were not able to get that evidence, Your Honor. Okay. So I guess what you're asking us to do today is, one, consider Estrada and perhaps remand to the Board if we deem it. And, two, I think we understand your argument on the Convention Against Torture, unless you have something to add to that. We take, of course, we start with the presumption of past persecution that everybody has agreed to and so forth. That's correct, yes. All right. Any questions? All right. Why don't you save some time for rebuttal. We'll hear from the government. Thank you. Good morning, Your Honors. May it please the Court. I'm Carmel Morgan on behalf of the Respondent, the U.S. Attorney General. I'd like to begin with addressing the Petitioner's 28J letter. It's well settled in this Court that arguments that are not raised in the opening brief are deemed waived.  If the Court, however, feels that it needs to address the applicability of Estrada-Espinoza, I would ask that the Respondent be given an opportunity to file a supplemental brief. Sure. Do you have any preliminary responses to Estrada-Espinoza as it applies to this case? You've had a little bit of time to think about it, and I realize you haven't had time to brief it. Preliminarily, Estrada-Espinoza, as I read it presently, deals only with statutory rape under 261.5. It specifically says in footnote 12 that it is not addressing the statute at issue in this case, the subsection D, which is where the actor is age 21 or above and the victim is under age 16. So I would say that Estrada-Espinoza doesn't deal directly with the statute in this case and is not applicable. What's your position on the Petitioner's ability to file a motion to reopen at this time? Do you think that's a time barred, a number barred, or do you have a preliminary view on that? It would appear that it would be both. Well, I'm not aware of a prior motion to reopen. It probably wouldn't be number barred. There might be a time bar issue. You're certainly welcome to file such a motion. I would urge this Court that if you do find you need to address at the present moment the applicability of Estrada-Espinoza, that you would consider remanding to the Board. That would seem an appropriate action as there's been an intervening change in case law and the Board hasn't had an opportunity to address it in the first instance. Yes, I mean, I haven't followed the developments at the Board level since we issued our decision. Are you aware of any subsequent BIA decisions applying Estrada-Espinoza? I am not aware of them. But as you pointed out, this was raised on Monday and today is Wednesday morning. So I'm not entirely certain. Ms. Morgan, I want to make sure I understand you. You're saying that there may or may not be some time problems with regard to the motion to reopen. Correct. But that you would not oppose, that might be putting words in your mouth, a remand to the BIA for consideration of how Estrada may apply to this case. Is that right? That is putting words in my mouth a little bit, I'm afraid. There's a secondary issue here, which is that the Petitioner was actually ordered removed based on two different grounds, not only his sexual abuse of a minor conviction, but also he was ordered removed based on two crimes involving moral turpitude, which he hasn't challenged below and isn't presently challenging. That would be a hurdle he would have to get over in order to be found not removable. I would say only that at this point, if the Court was going to go forward and address Estrada Espinoza in an opinion that they consider a remand because the Board hasn't had an opportunity to address that case. Sure. Nor perhaps the subsection to which you refer. The only reason I ask about the motion to reopen is that I don't want to send the Petitioner here on a wild goose chase. If the government's going to claim that it's time barred and that there's no effective relief that can be given because of a procedural bar, I don't want to blithely say, go file a motion to reopen. That's another avenue of relief. Right. It's sort of a separate issue apart from the present litigation, I think. Yeah. Okay. How about the merits of the case you're prepared to argue?  He's entitled to withholding of removal and protection under the Convention Against Torture. He does raise an issue that under withholding of removal, there was no explicit finding regarding past persecution. And that's correct. The IJ wasn't explicit in finding that the Petitioner had suffered past persecution. But it's the government's position that even if he had done so, it's clear that the evidence in the record rebuts the past persecution presumption that might apply because there's been a fundamental change of circumstances in Cambodia and the Khmer Rouge is no longer a military and political threat. It's surprising to presume, for lack of a better word, that the past persecution presumption applies. So I think that's kind of where we start in this case. And it seems to me that the case then revolves around changed country conditions. Their best argument is, look, everybody you sent back to Cambodia has been immediately imprisoned. And how do you respond to that? Well, imprisonment doesn't equal persecution or torture. The country report says that the 36 members who were repatriated to Cambodia were detained for up to several weeks. That report doesn't say that they were physically harmed or mentally harmed in any way. So it doesn't establish the fact that they were detained. It doesn't establish that they were either persecuted or tortured. It's a rather high bar. And an extreme concept in detention alone doesn't establish either persecution or torture. No, it doesn't rule it out either. I mean, it's one of those things where it at least raises a red flag that anyone sent back to Cambodia now is not likely to at least walk off the plane and come back to a village immediately. That may be true. This is a 2002 country report. There were subsequent sentences following the observation that these people were detained, which said that they were all released and that their rights were subsequently respected and that they were, in fact, apparently their efforts to reintegrate into Cambodian society were recognized or not interfered with. So given those two different statements, they were detained but they were all released, I think the immigration judge reasonably found that the standard for torture must be more likely than not. And it wasn't more likely than not. It was maybe somewhat likely. And as to torture, the record simply didn't show that anyone was tortured. They were simply detained. So I would- Morgan? Yes. Is there anything in the record that indicates why the government is putting these people in jail when they come back to Cambodia? No. I'm not aware of that. Because it seems that it might be that the government thought that Khmer Rouge people were returning and it wanted to investigate them to make sure they weren't Khmer Rouge. And when they found they weren't, then they'd let them go. But there's nothing in the record about that. No. I'm unaware of anything in the record about that. Certainly you would think in the case of the petitioner who was a refugee and his parents were apparently mistreated by the Khmer Rouge that the government would hold no grudge against him and, in fact, probably would look upon him favorably, that his parents opposed the same group that the current government opposes. Does the record contain the memorandum of understanding between Cambodia and the United States? I don't believe that's in the record, Your Honor. Okay. Very good. I think we have your argument at hand, unless there's anything you want to add to it. No, Your Honors. I would respectfully request that you deny the petition for review. And if there are no further questions, I'll go. Thank you. Thank you, Your Honor. If I could first address the motion to reopen issue. As you know, normally there is a time bar issue whenever a motion to reopen is filed 90 days beyond 90 days after the issuance of the BIA decision. The only exception to that is when there is a substantial change in the law. And it's a very gray area, gray issue. The last time that I'm aware of that the BIA actually has published decisions on allowing motions to reopen filed well beyond the 90-day period is when the Congress actually changed the definition of refugee to include coercive family planning. And so that was such a widespread change that the BIA accepted late motions. One reason why we've hesitated to file a motion to reopen at this point is that I suspect that the government will vociferously oppose. Yes, and they certainly haven't committed to support it here, obviously. What about the secondary reason for denying cancellation of removal, the moral turpitude crimes? My client came to the United States as a 13-year-old refugee, and he has a driving, a joyriding conviction, and also a, I think it was a theft or another conviction, Your Honor, in 1995. But if the 261.5D convictions are not considered aggravated felonies, he would qualify for cancellation of removal as well as 212C. Those are two applications that he filed with the immigration judge. There was a motion to terminate based on that, and the immigration judge basically pre-terminated those applications. So the issue of aggravated felonies, I would say we're not challenging the removal based on some of his convictions. But I also point out that there is a Ninth Circuit case that indicated that 261.5D conviction was not an aggravated, I'm sorry, was not a crime involving moral turpitude. So that is also a new intervening case law as well. Okay. Anything to add on your claims under the Convention Against Torture and your claim for withholding of removal? I think for those two claims, the main issue is who has the burden. Even though I acknowledge that withholding in Convention Against Torture, the threshold is at least 51 percent or higher, but the question is if there's past torture and past persecution, we believe that the burden shifts to the government. And it's not enough if there's a silence on the issue of whether these 36 out of 36 people were detained. If it's silent as to whether or not they were tortured, we believe that the government hasn't met its burden. Okay. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Thompson, Thomas, Aldrich